## Vankirk *versus* The Pennsylvania Railroad Co.

1. In an application for the removal of a case in which a corporation is a party, the affidavit may be made by an agent or employee.

2. A passenger purchased a railroad ticket from N. to W. and rode on it to M. an intermediate point; the ticket under the rules of the company was cancelled for the whole route; he voluntarily left the train at M. Subsequently he offered the ticket for his passage from M. to W.; the conductor took up the ticket, refused to allow him to ride and ordered him to leave the train, which he did. In a suit by the passenger against the railroad company the court rejected evidence by the plaintiff that he offered to pay his fare, if the conductor would return the ticket which was refused, to be followed by evidence that in claiming to ride he had acted in good faith upon information, by a ticket agent from whom he had previously purchased the ticket, that he had a right to ride on it. *Held* to be error.

3. By denying plaintiff's right to ride on the ticket the conductor waived all right to retain it; the plaintiff might have retained the ticket.

4. The declarations of the ticket agent made days after selling the ticket, although not evidence to establish a contract with the plaintiff, were evidence to show that plaintiff in good faith claimed a right to ride on the ticket.

5. Evidence that the conductor allowed plaintiff to ride past several stations after leaving M., and ejected him at a place remote from shelter, in a storm, &c., was proper for the jury in considering whether the conductor selected such place intentionally.

March 31st 1874. Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Snyder county:* No. 32, to July Term 1873.

This was an action originally brought in the Court of Common Pleas of Northumberland county, by Joseph Vankirk against the Pennsylvania Railroad Company. The writ was issued October 28th 1869. The defendants issued a præcipe for the removal of the cause to another county, as follows:—

"And now, March 30th 1872, the above defendant elects and determines to remove the above-stated case and all proceedings relating thereto, from the Court of Common Pleas of Northumberland to the Court of Common Pleas of the adjoining county of Union, through which said county of Union the Philadelphia and Erie Railroad does not pass, in accordance with the provisions of the Act of Assembly in such case made and provided; and the prothonotary of Northumberland county is hereby directed to certify the record and all proceedings in this case to the Court of Common Pleas of Union county.

"Frank Thompson, being duly sworn according to law, did depose and say that he is the superintendent of the above-named defendants, on the eastern division of the Philadelphia and Erie Railroad, where the alleged act complained of in this case is said to have occurred, and that the removal of the above-stated case to the county of Union is not for the purpose of delay, but because a

[Vankirk v. Pennsylvania Railroad Co.]

fair and impartial trial cannot be had in the said county of North-umberland, through which said railroad passes."

The plaintiff objected to the removal because—

1. The affidavit to the præcipe was not made by the president or any officer of the company.

2. The præcipe designates the county, which it is the duty of the president judge to do.

The court (Rockefeller, P. J.) made the following order:—

"April 1st 1872. The first objection overruled, and the second objection is sustained, and Snyder county is indicated by the president judge for the trial of this cause, under the provisions of the Act of April 25th 1870" (sect. 2, Pamph. L. 1292, 2 Br. Purd. 1164, pl. 3).

The plaintiff excepted to this order, and a bill of exceptions was sealed.

The cause was accordingly certified to the Court of Common Pleas of Snyder county.

The declaration in the first count was that the defendants were the owners of the Philadelphia and Erie Railroad, and that the plaintiff "became a passenger" in one of their cars, to be carried from Northumberland to Williamsport, and for a "reasonable hire" they undertook to carry him from Northumberland to Williamsport, and carried him part of the distance "to a certain wild and desolate place between said places, * * * far distant from any shelter, public road or highway," and refused to carry him any farther, and "wantonly, in an insulting manner, and without any just or legal cause," ordered him, "during a violent storm and rain, * * * to quit and leave the car, * * * threatening him that if he did not at once quit and leave the car, * * * he would be immediately ejected;" and that he, "to avoid being violently thrown and dashed from the said car, '* * * and under the compulsion aforesaid, quit and left the car." The declaration averred that plaintiff was "grossly insulted, outraged and injured, and was obliged to travel on foot through mud and mire" seven miles to Williamsport, and for four hours was exposed to the storm, "and was greatly wearied, fatigued, sore, wet and chilled, and his clothes * * * wet and greatly spoiled, and his health greatly endangered and impaired."

The second count was that the defendants undertook to carry plaintiff from Milton to Williamsport; in other respects it was substantially as the first count.

The case was tried February 26th 1873, in the Common Pleas of Snyder county, before Bucher, P. J., when it was admitted that the defendants were the lessees of the Philadelphia and Erie Railroad.

For plaintiff, Z. B. Glines, a conductor, testified that plaintiff got on his train with a ticket from Northumberland to Williams-

[Vankirk *v.* Pennsylvania Railroad Co.]

port ; he rode to Milton ; he got off the train there and was not on it afterwards ; witness took plaintiff's ticket, cancelled or punched it and handed it back to him.

On cross-examination, defendants proposed to ask witness "what was printed on the face and back of the ticket."

The plaintiff objected "that no notice had been given to produce the ticket, and no proof that search had been made for it."

The court admitted the question, because the plaintiff had examined the witness as to the contents of the ticket, and defendants, in cross-examination, might ascertain the character of the ticket. A bill of exceptions was sealed for plaintiff.

Witness said : The tickets were printed with the number of the station on the back, every station having a number ; conductors' orders were, when a ticket was presented, to punch out the numbers of the starting-place to the place of destination. Northumberland was 89, Williamsport 78 ; he punched out on plaintiff's ticket "89" and "78," when it was given to him, and then returned it to plaintiff. "When the numbers are so punched out the ticket is cancelled. This was done between Milton and Northumberland." Plaintiff did not ask witness to mark the ticket, so that he could get off at Milton and ride on it again. A general collection of tickets is made west of Muncy ; the ticket was handed back to be taken up west of Muncy ; tickets east of Muncy were lifted as presented.

The plaintiffs then offered the deposition of Jacob Hine, who in it testified, that in May 1867, he went on the train from Northumberland to Williamsport, and that plaintiff was on the same train ; the train suddenly stopped along the mountain between Muncy and Williamsport, it was "storming and raining badly at the time ; after the train started witness saw plaintiff standing on the side of the road ; there was no station or crossing nor public road near." Westfall was the conductor of this train. When witness was at the Northumberland station he saw plaintiff buy a ticket from A. Hawley, agent of defendants, from Northumberland to Milton.

Plaintiff proposed to ask witness whether he did not hear Hawley tell plaintiff that the ticket which he had previously purchased and rode on to Milton was good from Milton to Williamsport, and that he need only purchase a ticket from Northumberland to Milton, and whether he saw plaintiff show the ticket he had previously purchased to Hawley.

This question was objected to by defendant at the taking of the deposition.

The witness answered : "I heard Mr. Vankirk ask Mr. Hawley how it was about the ticket he had purchased a few days before to go to Williamsport, and on which he had ridden as far as Milton. Mr. Hawley said he supposed that if he had ridden no farther than Milton on it, it would be good unless it was cancelled. I saw Mr.

[Vankirk *v.* Pennsylvania Railroad Co.]

Vankirk hand Hawley a ticket; he examined it and said, 'Milton is only punched off, it is good from Milton up.' Mr. Hawley told Mr. Vankirk he should buy a ticket to Milton, and the other would be good from Milton up. I was employed by the telegraph company at the time, on the train looking after the wires. I did not see the ticket shown by Vankirk to Hawley so as to see what was on it. Mr. Hawley was in the office and I was sitting by the door. I have stated the conversation as well as I can recollect."

On the trial, on objection by the defendants, the court excluded this answer and sealed a bill of exceptions for the plaintiff.

Plaintiff renewed the offer of the deposition, to be followed with evidence that the defendant carried the plaintiff on the cars past four regular stations beyond Milton towards Williamsport, and compelled him to get out of the cars at a place several miles distant from any public road or shelter, at a time when it was storming and raining very hard, and that plaintiff at the time was aged sixty-eight years; and also that the conductor took the punched ticket from Northumberland to Williamsport and refused to give it back to the plaintiff, and that plaintiff before being put out of the cars offered to pay the conductor the fare from Milton to Williamsport if the conductor would return him his ticket, which the conductor refused to do, and insisted upon plaintiff getting out unless he would pay his fare from Milton to Williamsport without giving his ticket back, to be followed with proof that he was on the cars believing that he had a right to ride on the ticket that he had showed to Hawley, the agent of defendant, at Northumberland, as disclosed in the deposition.

The court rejected the offer and sealed a bill of exceptions for the plaintiff.

The plaintiff then gave in evidence the deposition of J. B. Riley. He testified that he was on the train when plaintiff was put off; it was along the mountain between Muncy and Williamsport, there was no station where he was put off; it was a stormy day; the conductor and plaintiff had considerable talk; the conductor said plaintiff would have to pay his fare or he would put him off the train; plaintiff said he had paid his fare once and that the conductor had his ticket; the conductor said it had been ridden out; plaintiff said it had not. Witness offered to pay plaintiff's fare; he declined, saying that he had paid his fare once and had the money to pay it, but the fare was paid. Before plaintiff passed down the steps of the car he said to the conductor, "Give me back my ticket and I will pay my fare." The conductor said he had had trouble enough about the matter. Witness did not see the conductor touch plaintiff. Plaintiff would not let witness pay nor would he pay himself, but when he was on the platform, he said he would pay if the conductor would give him back his ticket.

Plaintiff testified that he purchased a ticket from Northumberland to Williamsport from Hawley, the agent, at Northumberland;

he rode to Milton; he got off there on business and returned to Northumberland; Glines, the conductor, punched his ticket and handed it back to him.

It was then proposed to ask him whether he knew what punching a ticket meant.

The defendants objected to the question; the court rejected the offer and sealed a bill of exceptions.

It was proposed to ask plaintiff, whether he got into a train at a subsequent day to ride from Milton to Williamsport, in good faith believing he had a right to ride on the old ticket for the distance he had not previously ridden upon it: offered for the purpose of showing that he was honestly on the train and that they had no right to put him off.

The offer was rejected by the court and a bill of exceptions sealed.

Plaintiff testified that he bought a ticket from Hawley from Northumberland to Milton. It was then proposed to ask him whether he showed the punched ticket to Hawley when he bought the new one, and what Hawley said about its being good from Milton to Williamsport.

The defendants objected to the question; it was rejected by the court, and a bill of exceptions sealed.

Plaintiff further testified that, after the train left Northumberland, he gave his ticket to Milton to Westfall, the conductor. "I then showed him the other. He said I could not ride on the old ticket in that train. I told him I would ride on this road, for my ticket was good. I told him Glines had punched it and I did not know what it meant. I told him I had only ridden to Milton on it. I pulled out my business card and offered it to him; told him that Glines knew me, and if anything was wrong, he would make it right. He paid no attention to it and walked off; he never spoke to me after that until he came round above Muncy for the tickets. He passed me several times, but never spoke to me. He passed me several times after the cars left Milton. Beyond Muncy he came round and took my ticket; he looked at it and said I must pay or get off. I told him my ticket was good. I would not pay twice. He said if I did not he would put me off. Mr. Riley behind me got up and said, 'Don't put the old man off in the storm; I will pay his fare.' I thanked Riley, and said 'my fare is paid. I have money enough to pay my fare myself, but my fare is paid.' The conductor rang the bell. He was stopping the train, and I told him if he would give up my ticket I would pay the fare. He refused to do so, and opened the door and ordered me out, and said he would put me out if I did not go."

Plaintiff offered to prove that it was storming very hard, he had to walk to Williamsport in the mud and rain, and was injured in health by the exposure; that he was sixty-eight years old at the time; that there was no road except the railroad anywhere near;

[Vankirk *v.* Pennsylvania Railroad Co.]

no shelter but along the White Deer mountain; that he was exposed to the laughs and jeers of the passengers. This offered to show how badly defendant acted to him, and to prove the damage he sustained.

Defendants objected to the offer; it was rejected by the court and a bill of exceptions sealed.

On cross-examination he said:—

" The conductor came round and collected the tickets just as the train started to Milton. He then took up the ticket to Milton. Then I showed him the ticket upon which I had previously ridden to Milton and which was punched. He did not tell me then that I would either have to buy another ticket at Milton, or leave the train."

The plaintiff having closed, the defendants examined Westfall the conductor. His testimony as to the occurrences on the train did not differ materially from that of the plaintiff's witnesses.

Amongst other things, he said that he kept the ticket because he understood the plaintiff was going to bring suit.

The court charged:—

" The evidence upon which the plaintiff relied to sustain this action, has been excluded by the court, to which action the plaintiff has taken exception. If the court was wrong in their action, our superiors, the Supreme Court, will apply the remedy. There are no disputed facts in the case for you to pass upon as we apprehend, and we therefore instruct you to find for the defendants."

The verdict was for the defendants.

The plaintiff took a writ of error.

He assigned for error:—

1. The order of the Court of Common Pleas of Northumberland county removing the case to Snyder county.

2. Admitting evidence by Glines of what was printed on the face and back of plaintiff's ticket.

3. Rejecting evidence that Hawley, the ticket agent, said when plaintiff bought the second ticket that the first ticket was good from Milton to Williamsport.

4. Rejecting evidence that defendants carried plaintiff past four regular stations beyond Milton, and compelled him to get out of the cars at a desolate place, &c.

5. Rejecting the question whether plaintiff knew what punching the ticket meant.

6. Rejecting the question whether plaintiff, on the second " ride," entered the car in good faith, believing he could ride on the first ticket for the distance on which he had not already ridden.

7. Rejecting the question whether plaintiff showed the punched ticket to Hawley, the agent at Northumberland, when he bought the new one, and what Hawley said about its being good from Northumberland to Williamsport.

[Vankirk *v.* Pennsylvania Railroad Co.]

8. Rejecting offer to prove that it was storming when plaintiff was put off, that he had to walk to Williamsport in mud and rain, and that his health was injured thereby, &c.

9. The charge of the court.

*S. P. Wolverton* and *J. W. Comly,* for plaintiff in error.

*G. F. Miller* (with whom was *H. T. Beardsley*), for defendants in error, as to the rulings on the questions of evidence: Deitrich *v.* Penna. Railroad, 21 P. F. Smith 432; McClure *v.* Phila., W. & Balt. Railroad, 34 Maryland Rep. 532; State *v.* Overton, 4 Zabriskie 438; O'Brien *v.* Boston & Worcester Railway Co., 15 Gray 20; Angell on Carriers, sect. 527.

Mr. Justice MERCUR delivered the opinion of the court, May 11th 1874.

It is true the Act of Assembly providing for the removal of a cause, in which a corporation is a party, from the county in which it is brought to another, declares the affidavit shall be made by the party. To give this a literal construction would defeat the manifest intent and spirit of the law. A corporation must necessarily act through its officers, agents and attorneys. The force of this fact is felt by the plaintiff. He admits that the affidavit may be made by an officer of the corporation, but denies that it can by an agent or employee. The reason for this distinction is not very clear. It cannot be because the existence of the necessary facts may not be as well known to an agent as to an officer. In fact an employee engaged upon the line of the road may know the sentiment of the people towards it better than an officer, whose time is occupied in the office, or who occasionally passes over the road. This affidavit was made by the superintendent of that division of the road where the controversy arose. It is not alleged that 'he made it without authority from the company, nor that his action therein has ever been repudiated by the defendant. The objection then must rest upon the ground of the legal inability of the defendant to authorize an agent or employee to make such an affidavit. In Academy of Fine Arts *v.* Power, 2 Harris 442, Chief Justice Gibson well asked, " why should not the affidavit be as well made by a special deputy as by a president, secretary or treasurer ?" In that case the affidavit in behalf of the corporation was made by an agent to purchase a writ of error. It was held that the affidavit was well made by an agent, though he was not expressly deputed for that purpose. We see no error in the first assignment.

The 3d, 4th, 6th and 7th assignments will be considered together. By the uncontradicted testimony it appears the plaintiff had purchased a ticket from Northumberland to Williamsport. He had

[Vankirk v. Pennsylvania Railroad Co.]

ridden upon it as far as Milton, being less than one-third of the distance. Several days thereafter, he endeavored to ride upon it from Milton to Williamsport. The conductor refused to permit him so to ride, took up the ticket against the plaintiff's will, and put him off the train.

The court rejected the evidence offered by the plaintiff to prove that, before he was put out of the cars he offered to pay his fare, if the conductor would return his ticket; that the conductor refused to return it, but insisted upon retaining it and also upon the plaintiff's paying his fare; to be followed by evidence that, in claiming to ride upon the ticket he was acting in good faith, upon information given to him by the ticket agent of whom he had previously purchased the ticket.

It appears the plaintiff voluntarily left the train at Milton, without having communicated his intention to the conductor in charge, and without making any arrangement for a subsequent continuation of the trip. It is claimed that this was an abandonment of his right to demand a passage upon that ticket over the untravelled portion of his journey. This view is sustained under the general rules of the company, by the authority of Dietrich v. Pennsylvania R. R. Co., 21 P. F. Smith 442, and kindred cases. His legal right had terminated. If he thereafter procured a ride upon it, it would be through favor only of the company. Waiving these, the question is whether the plaintiff, under the general instructions given to the conductor, had a right to ride upon the ticket, it does not follow that the conductor had any right to take it from him. The conductor assumed the ticket to be of no value to the plaintiff, and persisted in retaining it. His determined persistency in retaining it was a most expressive declaration of its value to the defendant. The plaintiff believed it to be of value to him. The ticket agent had informed him that he was entitled to ride upon it. Thus the employees of the company differed. The plaintiff desired to test the question by legal proceedings. This ticket was to him important. It was evidence of value paid. It was evidence of a claim which he desired to establish by law. By denying the plaintiff's right to ride upon it, the conductor waived all right to take or retain it. The defendant had no more claim to this ticket than to any one of a half dozen other tickets, either cancelled or uncancelled, which the plaintiff may have had in his pocket. By leaving the train at Milton the plaintiff lost no other right than of riding upon the ticket thereafter. He did not forfeit the right to retain the ticket, which, according to the rules of the company, had been left in his hands. Many stations intervened between Milton and Williamsport. Before leaving the former place the defendant would not have been justified in taking up the ticket without giving the plaintiff a check or some evidence that he had paid his fare:

[Vankirk *v.* Pennsylvania Railroad Co.]

State *v.* Thompson, 20 N. H. 250. The right to take up this ticket must not be confounded with a case where a person has actually ridden on the ticket the whole distance for which it calls, nor where he has obtained it in fraud of the company. In either of these cases it may be taken up. In the former the rules of the company and the implied contract in its purchase require it. In the latter the holder never had any right to its possession. In this case the conductor, under his general orders, may not have been authorized to permit the plaintiff to ride on this ticket. There was, however, nothing in equity or good morals to prevent the defendant from permitting it to be done. There was no impropriety in the plaintiff's retaining the ticket.

The conductor having ignored the plaintiff's right to ride upon it, the most he was justified in doing was to require a payment of the fare. This the plaintiff proposed to show he offered to do, but the conductor required more. He required not only payment for the ride the plaintiff was then taking, but also the yielding up of a ticket on which he was not riding. The conductor had no such right. To concede to him the right to demand of a passenger anything additional to the accustomed fare would be fraught with the most mischievous consequences. While a railroad company should be protected in the enforcement of all its reasonable rules, yet fully equal care must be taken to protect the rights of passengers from any encroachment. The plaintiff was entitled to ride upon the payment of his fare only. It was in clear violation of law to require more of him. He was justified in requiring the return of the ticket improperly withheld from him. The defendants being in fault themselves cannot enforce the right against the plaintiff, which they seek to invoke: 1 Redfield on Railways 105, pl. 13; Jennings *v.* Great Western Railway Co., 12 Jur. N. S. 331.

Waiving the question then whether the declarations of the ticket agent, made several days after his sale of the ticket, were not admissible to establish a contract between the parties; we think they were admissible as evidence of the good faith of the plaintiff in his claim to ride upon it, and of his belief in its uncancelled condition. These facts, together with the additional one that the plaintiff was permitted to ride past several stations, are proper to be considered by the jury in determining whether he had just reason to suppose the conductor would permit him to ride through on the ticket, and was thereby induced to decline paying his fare until a late moment.

The fifth assignment is not very important. Inasmuch, however, as the witness had testified in regard to the ticket being punched, we think it was clearly pertinent to ask him "whether he knew what punching meant?" This may have been understood to ask whether he knew what act constituted punching, or what was its purpose.

[Vankirk *v.* Pennsylvania Railroad Co.]

We think the evidence covered by the eighth assignment bears upon the question of damages. The conductor having suffered the plaintiff to ride past several stations before ejecting him, and then having put him out, remote from any shelter, and in a severe storm, may be considered by the jury in deciding whether the conductor intentionally selected this inhospitable spot, or whether it happened to be the locality of the plaintiff's persistent refusal to pay. The learned judge therefore erred in taking the case from the jury, and the judgment must be reversed.

Judgment reversed, and a *venire facias de novo* awarded.